William Turley, Esq. (122408)
David Mara, Esq. (230498)
Jamie Serb, Esq. (289601)
Tony Roberts, Esq. (315595)
**THE TURLEY & MARA LAW FIRM, APLC**
7428 Trade Street
San Diego, California 92121
Telephone: (619) 234-2833
Facsimile: (619) 234-4048

Attorneys for Plaintiff NATHANIEL HELTON
on behalf of himself and all others similarly
situated and on behalf of the general public.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATHANIEL HELTON, on behalf of himself and all others similarly situated, and on behalf of the general public,<br><br>Plaintiff,<br><br>v.<br><br>PEPSI-COLA SALES AND DISTRIBUTION, INC.; NEW BERN TRANSPORT CORPORATION; PEPSICO, INC.; and DOES 1 through 100, inclusive,<br><br>           Defendants. | Case No. 3:17-cv-01135-EMC<br><br>[*Assigned to the Honorable Edward M. Chen*]<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**Date: January 17, 2019**<br>**Time: 1:30 p.m.**<br>**Judge: Edward M. Chen**<br>**Ctrm.: 5**<br><br>Action Filed:    January 25, 2017<br>FAC Filed:     December 12, 2017<br>SAC Filed:     June 6, 2018<br>Action Removed: March 6, 2017<br>Trial Date:      Not set |

1  **ALL PARTIES HEREIN AND TO THEIR COUNSEL OF RECORD:**

2    PLEASE TAKE NOTICE that on January 17, 2019, at 1:30 p.m. or as soon thereafter as
3  the matter can be heard in Courtroom 5 of the above entitled courthouse located at 450 Golden
4  Gate Avenue, San Francisco, California 94102, Plaintiff Nathaniel Helton (hereinafter
5  "Plaintiff") will move this Court for an Order Granting Plaintiff's Motion for Final Approval of
6  Class Action Settlement. Defendants PEPSI-COLA SALES AND DISTRIBUTION, INC.,
7  NEW BERN TRANSPORT CORPORATION, and PEPSICO, INC. ("Defendants" or "New
8  Bern") do not oppose this Motion.

9    This motion is based upon this notice, the accompanying Memorandum of Points and
10 Authorities filed herewith; the Court's Order Granting Plaintiff's Motion for Preliminary
11 Approval of Class Action Settlement; the filings on record in this case; and upon such further
12 evidence, both documentary and oral, that may be presented at the hearing of this motion.

13

14 Dated: December 13, 2018                    **THE TURLEY & MARA LAW FIRM, APLC**

15

16

17                                             By: /s/ *Jamie Serb*
18                                                 David Mara, Esq.
                                                   Jamie Serb, Esq.
19                                                 Tony Roberts, Esq.
                                                   Attorneys for Plaintiff

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................ 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ....................................................... 2

III. SUMMARY OF SETTLEMENT ................................................................................... 3

IV.  THE SETTLEMENT PROCESS HAS BEEN DUTIFULLY ADHERED TO ................ 5

    a.  Dissemination of the Class Notice ..................................................................... 5

    b.  No Objections and Only Two Requests for Exclusion Were Received ............ 5

    c.  Challenges to Employment History .................................................................. 6

V.   DISCUSSION ............................................................................................................. 6

    a.  The Settlement Meets the Standards Governing Final Approval ..................... 6

        i.   Settlement was Reached Through Arm's-Length Negotiations ............. 7

        ii.  In Re Bluetooth Headset Products Liability Litigation, 654 F.3d 935 (9th Cir. 2001), Factors are not Present Here ................................................................. 7

        iii. The Settlement is Fair .............................................................................. 8

    b.  Sufficient Discovery and Investigation Has Occurred ................................... 11

    c.  Class Counsel Have Extensive Experience Acting as Class Counsel ........... 12

    d.  The Class Members' Response to the Settlement is Further Evidence that the Settlement is Fair and Reasonable ................................................................. 12

    e.  The Court Should Approve of the Settlement Administration Fee ............... 13

    f.  The Court Should Approve the PAGA Payment to the LWDA ..................... 13

VI.  CONCLUSION ........................................................................................................ 14

**TABLE OF AUTHORITIES**

**Cases**

*Boyd v. Bechtel Corp.*,
   485 F. Supp. 610, 622 (N.D. Cal. 1979) .................................................................................... 7

*Brinker Restaurant Corp. v. Superior Court*
   (2012) 53 Cal.4th 1004 ............................................................................................................ 12

*Class Plaintiffs v. Seattle*,
   955 F.2d 1268, 1276 (9th Cir. 1992) ......................................................................................... 6

*Eisen v. Porsche Cars North America, Inc.*,
   2014 WL 439006 at *3 (C.D. Cal. Jan. 30, 2014) .................................................................... 11

*H&R Block Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96, 116 (2d Cir. 2005) ................................................................................................. 7

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011, 1026 (9th Cir. 1998) ................................................................................. 6, 7, 9

*Heritage Bond Litigation*,
   2005 WL 1594403 ..................................................................................................................... 6

*Hernandez v. BCI Coca-Cola Bottling Co.*,
   554 Fed. Appx. 661 (9th Cir. 2014) ......................................................................................... 10

*In re Bluetooth Headset Products Liability Litigation* ("*Bluetooth*"),
   654 F.3d 935, 946 (9th Cir. 2011) ......................................................................................... 7, 8

*In re MRV Communs., Inc. Derivative Litig.*,
   2013 WL 2897874, *2 (C.D. Cal. June 6, 2013) ..................................................................... 11

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*,
    2013 U.S. Dist. LEXIS 123298, *253-54 (C.D. Cal. July 24, 2013); 4 Newberg § 11.41 at 87-
    89 ............................................................................................................................................. 11

*Joel A. v. Giuliani*,
   218 F.3d 132, 138 (2d Cir. 2000) ............................................................................................... 6

*Kirkorian v. Borelli*,
   695 F. Supp. 446, 451 (N.D. Cal. 1988) .................................................................................... 7

*Lane v. Facebook, Inc.*,
　2010 WL 9013059, *5 (N.D. Cal. March 17, 2010) ................................................................ 11

*Linney v. Cellular Alaska P'ship*,
　151 F.3d 1234, 1242 (9th Cir. 1998) ....................................................................................... 9

*Mandujano v. Basic Vegetable Products, Inc.*,
　541 F. 2d 832, 837 (9th Cir. 1976) ........................................................................................ 12

*Marshall v. Holiday Magic, Inc.*,
　550 F.2d 1173 (9th Cir. 1977) ................................................................................................. 8

*Morey v. Louis Vuitton N. Am., Inc.*,
　2014 WL 109194, *5 (S.D. Cal. Jan. 9, 2014) ....................................................................... 11

*Officers for Justice v. Civil Service Comm. of City and County of San Francisco*,
　688 F. 2d 615, 625 (9th Cir. 1982) .......................................................................................... 8

*Price v. Starbucks Corp.*
　(2011) 192 Cal.App.4th 1136,1143 ....................................................................................... 10

*Rodriguez v. West Publishing Corp.*,
　563 F.3d 948 (9th Cir. 2009) ................................................................................................... 7

*Van Ba Ma v. Covidien Holding, Inc.*,
　2014 U.S. Dist. LEXIS 76359, *6-7 (C.D. Cal. 2014) ............................................................ 8

**TO THE HONORABLE EDWARD M. CHEN, DEFENDANTS, AND ALL COUNSEL OF RECORD:**

Plaintiff NATHANIEL HELTON (hereinafter referred to as "Plaintiff" or "Mr. Helton"), a former driver for Defendant NEW BERN TRANSPORT CORPORATION (Defendants PEPSI-COLA SALES AND DISTRIBUTION, INC.; NEW BERN TRANSPORT CORPORATION; and PEPSICO, INC will hereinafter collectively referred to as "New Bern" or "Defendants")(collectively referred to as the "Parties"), submits this Motion for Final Approval of Class Action Settlement:

## I. INTRODUCTION

This motion seeks final approval of the non-reversionary $5,000,000 proposed wage and hour class action settlement by Plaintiff. Plaintiff filed this wage and hour class action against Defendants alleging that Defendants violated California labor laws. Plaintiff brought this class action on behalf of himself and all Drivers – including those employed under the title of Bulk Drivers, Delivery Bay Drivers, Drivers, Delivery Drivers, Delivery Driver Trainees, Relief Drivers, GEOBox Drivers, FSV Drivers, and Transport Drivers – employed by New Bern in the State of California during the Class Period. In response to the Class Notice, no objections and only two requests for exclusion[1] have been received by the Settlement Administrator from Class Members.

The proposed settlement of $5,000,000 is projected to pay Class Members an average estimated State Law Award of $1,994.43 and Federal Law Award of $607.89 less taxes for the portion that is devoted to wages.[2] The highest estimated State Law Award of $3,533.35 and Federal Law Award of $882.71, less taxes for the portion that is devoted to wages.

The Parties negotiated a settlement of class claims, the terms of which were preliminarily approved by this Court on August 29, 2018 and are subject to and contingent upon this Court's final approval. As part of its August 29, 2018 preliminary approval order, the Court conditionally certified, for settlement purposes only, the following Class: "all Drivers – including those

---

[1] These requests for exclusion represent 0.1% of the Settlement Class.
[2] Declaration of Melinda Yang of CPT Group, Inc. in Support of Motion for Final Approval of Class Action Settlement ("Yang Decl.") ¶¶ 9,11.

1  employed under the title of Bulk Drivers, Delivery Bay Drivers, Drivers, Delivery Drivers,
2  Delivery Driver Trainees, Relief Drivers, GEOBox Drivers, FSV Drivers, and Transport Drivers
3  – employed by New Bern in the State of California during the Class Period." Dkt. # 51. It is
4  requested this Court grant final approval of this settlement, because after analyzing the strengths
5  and vulnerabilities of the Class' claims along-side Defendants' potential liability exposure, this
6  proposed non-reversionary settlement of $5,000,000 is fair, reasonable, and adequate.

7  To date: (1) 1,437 Class Members were mailed a Notice of Class Action Settlement
8  ("Class Notice"); (2) of the Class Notices mailed, only one was returned as completely
9  undeliverable;[3] (3) there have been no objections to the settlement; and (4) there has been only
10 two requests for exclusion from the settlement. The Class Members' response supports the
11 Court's finding that the Settlement is fair, reasonable, and adequate.

12 For the reasons that follow, it is respectfully requested the Court grant this motion and
13 find the settlement to be fair, reasonable, and adequate.

14 **II. FACTUAL AND PROCEDURAL BACKGROUND**

15 This case involves wage and hour claims against New Bern, which is a food and beverage
16 company producing and supplying widely recognized products, such as Pepsi, Mountain Dew,
17 etc. In doing so, New Bern operates approximately 22 locations throughout California and
18 employs Drivers to carry out its business. Deposition of Victor Bolanos ("Bolanos Depo."), 15:4-
19 21:14.

20 On January 25, 2017, Plaintiff filed a complaint in the Alameda County Superior Court,
21 which was designated with case number RG17847014. Plaintiff's complaint alleged causes of
22 action for: failure to pay all straight time wages; failure to pay overtime; failure to provide meal
23 periods; failure to authorize and permit rest periods; knowing and intentional failure to comply
24 with itemized employee wage statement provisions; failure to pay all wages due at the time of
25 termination of employment; and violation of Unfair Competition Law. *See* Dkt. #1.

26 On March 6, 2017, New Bern filed a notice of removal to this Court pursuant to 28
27
28 [3] This one undeliverable Class Notice represents 0.06% of the total Class Members.

1 U.S.C. §§ 1332, 1441. New Bern's Notice of Removal states that removal is proper under the
2 Class Action Fairness Act of 2005 (CAFA). *See* Dkt. #1.

3 The Parties attended an Initial Case Management Conference ("CMC") on November 28,
4 2017 and informed the Court that the case did not settle at the October mediation, but that the
5 Parties were going to proceed with a second mediation. *See* Dkt. # 26. At this CMC, the Court
6 granted Plaintiff leave to file an amended complaint (after meeting and conferring with New
7 Bern) and set a briefing schedule regarding class certification. *See* Dkt. # 26. On December 12,
8 2017, Plaintiff filed his First Amended Complaint, amending the failure to pay overtime claim to
9 state a claim under the FLSA (and not the California Labor Code), removing the failure to
10 provide meal period claim, and adding a claim for failure to reimburse business expenses. *See*
11 Dkt. # 27. The Parties attended a second mediation on March 12, 2018, but were unable to reach
12 a settlement at that time. The Parties scheduled and attended a third mediation on May 21, 2018,
13 which resulted in a mediator's proposal that was accepted by both Parties. Thereafter, on June 6,
14 2018, Plaintiff filed a Second Amended Complaint ("SAC"), which added a claim for penalties
15 under the Private Attorneys General Act ("PAGA"). *See* Dkt. #34; Mara Dec. ¶ 8.

16 On June 22, 2018, Plaintiff filed his Motion for Preliminary Approval. The Court ordered
17 supplemental briefing in support of preliminary approval on June 28, 2018. Plaintiff filed a Joint
18 Supplemental Brief in Support of Preliminary Approval on July 5, 2018. The hearing on
19 Plaintiff's Motion for Preliminary Approval occurred on August 9, 2018. The Court requested
20 the Parties amend the settlement agreement and re-submit it with a proposed order. The Court
21 granted preliminary approval of the settlement on August 29, 2018 and set the hearing date for
22 Plaintiff's Motion for Final Approval as January 17, 2019 at 1:30 p.m. Defendants also sent a
23 notice of the proposed class action settlement in this case to the offices of federal and state
24 Attorney Generals in California pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715 (b)
25 ("CAFA Notice"). *See* Declaration of Ashley Hirano.

26 **III. SUMMARY OF SETTLEMENT**

27 As described in Plaintiff's Motion for Preliminary Approval, and stated in the settlement
28 agreement, which, along with the first and second addendums to the agreement, are attached as

1  **Exhibit 1** to the Declaration of David Mara, Esq., in Support of Plaintiff's Unopposed Motion for Final Approval of Class Action Settlement ("Mara Decl."), the basic Settlement terms are as follows: Under the Agreement, Defendant shall pay $5,000,000 ("Settlement Fund"). This Settlement Fund includes payments made for: (1) settlement administration costs of $25,000;[4] (2) Class Representative's Service Award/General Release Payment not to exceed $7,500 to the named Plaintiff; (3) attorneys' fees not to exceed $1,250,000 (25% of the Settlement Fund); (4) costs of $42,716.30 (originally estimated not to exceed $65,000); and (5) $75,000 to the Labor and Workforce Development Agency as its 75% share of the $100,000 PAGA payment. All of these payments are subject to the Court's final approval. Mara Decl. ¶ 9.

After the above amounts are subtracted from the Settlement Fund, the remaining portion – referred to as the Payout Fund – shall be available for distribution to class members. After subtracting the above amounts, the Payout Fund available for individual settlement payments is approximately $3,599,783.70. The Payout Fund is divided into two funds – 80% of the Payout Fund will be allocated to the State Law Fund and the remaining 20% of the Payout Fund will be allocated to the Federal Law Fund. Class Members will automatically receive their pro rata share of the State Law Fund. Class Members had to opt-in/return a Claim/FLSA Consent Form to receive their pro rata share of the Federal Law Fund, to account for the special opt-in/consent requirement under the FLSA. Mara Decl. ¶ 10.

Class Members' State Law Awards will be calculated by (1) dividing the State Law Payout Fund by the total of all Class Members' Workweek Figures to arrive at a Per-Workweek Amount and (2) multiplying the Per-Workweek Amount by the individual Class Member's Workweek Figure. The number of workweeks for each Class Member will be determined by adding all the calendar days within the inclusive dates of employment and dividing that number by 7. Any partial workweek will be rounded up to the nearest full workweek. This will make up the Class Member's "Workweek Figure." The Federal Law Payout Fund is calculated in the same manner. A total of 946 valid Federal Law Fund claims were received, representing 80.37%

---

[4] Yang Decl. ¶ 13.

of the Federal Law Fund. The remaining unclaimed Federal Law Fund will be distributed *cy pres.* Mara Decl. ¶ 11; Yang Decl. ¶ 11.

As the will be discussed, the settlement has been a resounding success, with no objections to the settlement submitted by Class Members and only two requests for exclusion submitted. The class response and settlement shares to class members further demonstrate the settlement being fair, reasonable and adequate.

## IV. THE SETTLEMENT PROCESS HAS BEEN DUTIFULLY ADHERED TO

### a. Dissemination of the Class Notice

Preliminary Approval was granted on August 29, 2018. At that time, CPT Group, Inc. ("CPT") was appointed by the Court as the Settlement Administrator. CPT has complied with this Court's orders concerning dissemination of the Class Notice by first-class regular U.S. Mail. The Class Notice was mailed to 1,437 class members on October 12, 2018. Dkt. # 57-2 at ¶ 6. CPT performed a Skip Trace on the returned Class Notices without forwarding addresses to locate new addresses. Yang Decl. at ¶ 4. CPT re-mailed 55 Class Notices because: (1) CPT received a forwarding address; (2) CPT found an updated address through skip tracing; or (3) a Class Member requested that their notice be re-mailed. CPT Decl. at ¶ 4. One Class Notice was ultimately deemed undeliverable.[5] Yang Decl. at ¶ 4. In addition, throughout the notice process CPT has operated a toll-free telephone number for Class Members to call with inquiries concerning the settlement. Yang Decl. ¶ 2.

### b. No Objections and Only Two Requests for Exclusion Were Received

The deadline to submit an objection to the settlement or a request for exclusion from the settlement was December 11, 2018. No objections have been filed with the Court or submitted to CPT and only two requests for exclusion from the settlement were received by CPT. Yang Decl. ¶¶ 6, 9. The two requests for exclusion represents 0.1% of the total class members. Therefore, under the settlement, 1,435 Participating Class Members will receive a Settlement Payment. Yang Decl. ¶ 9.

---

[5] This one undeliverable Class Notices represent 0.06% of the total 1,435 class members who did not request exclusion.

### c. Challenges to Employment History

There are two (2) outstanding disputes submitted by Class Members challenging the number of workweeks that they are entitled to under the settlement. These disputes have been forwarded to Defense Counsel for review to confirm whether or not the Class Members are eligible to receive their disputed amount. Yang Decl. ¶ 5.

## V. DISCUSSION

### a. The Settlement Meets the Standards Governing Final Approval

Matters that have been filed as class actions require court approval before a settlement can be consummated. *See* Fed. R. Civ. Proc. ("FRCP") 23(e). FRCP 23 (e) provides that any compromise of a class action must receive Court approval. The Court has broad discretion to grant approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998); *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). In determining whether a settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Heritage Bond Litigation*, 2005 U.S. Dist. LEXIS 13555, *9 (C.D. Cal. June 10, 2005) (*citing Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

Approval of a class action settlement involves a two-step process. In determining whether to grant final approval of the settlement, a court examines the terms for overall fairness and, in so doing, balances the following factors:  the strength of the plaintiff's case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed; the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; the reaction of the class members to the proposed settlement. *Hanlon*, 150 F.3d at 1026.

Here, the proposed settlement was reached only after undertaking a robust factual and legal investigation into Defendants' pay structures and wage and hour policies, which culminated in the parties reaching an agreement to settle after attending three days of arm's length

mediation. The settlement amount takes into consideration the significant risks with regard to the certifiability of Plaintiff's claims, as well as difficulties associated with prevailing on the merits. In light of these risks, the settlement amount is well within the ballpark of reasonableness.

### i. Settlement was Reached Through Arm's-Length Negotiations

The Ninth Circuit has shown longstanding support of settlements reached through arm's length negotiation by capable opponents. In *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), the Ninth Circuit expressly opined that courts should defer to the "private consensual decision of the [settling] parties." *Id.* at 965, citing *Hanlon*, 150 F.3d at 1027. "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *H&R Block Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116 (2d Cir. 2005); se*e also Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) (opinion of experienced counsel is entitled to considerable weight); *Boyd v. Bechtel Corp*., 485 F. Supp. 610, 622 (N.D. Cal. 1979) (recommendations of plaintiffs' counsel should be given a presumption of reasonableness).

The Parties attended three mediations in this matter, held on October 26, 2017, March 12, 2018, and May 21, 2018. In each of these sessions, the Parties engaged in extensive, arms-length negotiations mediated by respected wage and hour mediator, Michael Dickstein. After considerable negotiation, the Parties were unable to reach a settlement at mediation. However, on May 25, 2018, Mr. Dickstein issued a proposal, which the Parties mutually accepted on May 30, 2018. Thereafter, the Parties met and conferred regarding all the terms of the Settlement and finalized their agreement in a long-form agreement as reflected in the Parties' Agreement that the Parties now seek final approval of in the instant motion. Mara Decl. ¶ 12.

### ii. *In Re Bluetooth Headset Products Liability Litigation,* **654 F.3d 935 (9th Cir. 2001), Factors are not Present Here**

In *Bluetooth,* the Ninth Circuit articulated additional factors that need to be considered, especially where a settlement has been reached prior to formal class certification. *In re Bluetooth Headset Products Liability Litigation* ("*Bluetooth*"), 654 F.3d 935, 946 (9th Cir. 2011). As such, settlement agreements reached prior to class certification must withstand a higher level of

scrutiny for signs of collusion or other conflicts of interest than ordinarily required under Rule 23(e). The three signs *Bluetooth* instructs trial courts to look for are:

1. When class counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution, but counsel is amply rewarded;
2. When the parties negotiate a 'clear sailing' arrangement providing for the payment of attorney's fees separate and apart from class funds without objection by defendant;
3. When the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund. *Id* at 947.

This Settlement passes the *Bluetooth* test. The Payout Fund is nearly 2.85 times larger than the fees requested by Class Counsel, which is the accepted federal benchmark of 25% of the Settlement Fund.[6] Additionally, although the settlement agreement states that Defendants will not object to attorney fees up to 25% of the Settlement Fund, any amount requested by Class Counsel and not awarded shall be distributed *cy pres*. Accordingly, unlike the settlement agreement in *Bluetooth,* the instant settlement cannot be said to arouse suspicion of collusion.

### iii. The Settlement is Fair

When evaluating the settlement terms for purposes of ruling on whether to finally approve it, the Court is to review the strength of a plaintiff's case, including "the probable outcome of a trial on the merits of liability and damages as to the claims, issues, or defenses of the class and individual class members." *Van Ba Ma v. Covidien Holding, Inc.*, 2014 U.S. Dist. LEXIS 76359, *6-7 (C.D. Cal. 2014) (*citing Marshall v. Holiday Magic*, *Inc.*, 550 F.2d 1173 (9th Cir. 1977)). In ruling on final approval, the "fairness hearing is not to be turned into a trial or a rehearsal for trial on the merits." *Id.* (*quoting Officers for Justice v. Civil Serv. Comm'n of the City and Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

There is no standard or benchmark for determining whether a settlement is fair. "Ultimately the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice v. Civil Service Comm. of City and County of San Francisco*, 688 F. 2d 615, 625 (9th Cir. 1982). A court should weigh

---

[6] Class Counsel is requesting $1,250,000 (25% of the GSA). The NSA is approximately $3,599,783.70. $3,599,783.70 divided by 2.85 equals $3,562,500.

the benefits that the settlement will realize for the class against the uncertainty of litigation and the possibility that the class members would obtain no relief in the absence of a settlement. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("...it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."); *see also Hanlon*, 150 F.3d at 1026 (When considering the fairness of a proposed class settlement, courts consider the strength of a plaintiff's case against the risk, expense, complexity and likely duration of further litigation.).

As discussed at length in Plaintiff's Motion for Preliminary Approval and Supplemental Brief in Support of Preliminary Approval, the liability questions in this case touched on a wide expanse of California's wage and hour laws, many of which are subject to an ever-changing legal landscape, as appellate cases continually issue and refine the analysis. *See* Plaintiff's Motion for Preliminary Approval, filed June 22, 2018 (Dkt. # 38) at pages 22-31; Supplemental Brief ISO Motion for Preliminary Approval, filed July 5, 2018 (Dkt. # 44) at pages 2-11. Mara Decl. ¶ 13.

In sum, Plaintiff's claims challenged Defendants' policies and practices with respect to meal and rest periods and providing "duty-free" breaks to non-exempt employees. Plaintiff contends – and Defendants vigorously dispute – that meal and rest periods are not duty-free because New Bern required Drivers to be financially responsible for the truck, the trailer, and load at all times. Moreover, Mr. Helton contends that New Bern requires Drivers to keep their phones on throughout the work day, so that they remain in contact with dispatchers and customers. Plaintiff asserts that this duty does not abate during meal and rest periods. Further, Plaintiff asserts that because New Bern does not provide duty-free meal periods, Drivers must be paid for the time they spent working while on unpaid meal periods and are also entitled to waiting time penalties.[7] Plaintiff also claimed that New Bern's wage statements did not comply with Labor Code § 226, asserting that they failed to itemize the total hours worked each pay period. Plaintiff further asserted a claim for reimbursement of business expenses, arguing Drivers were required to charge company cellphones using their own electricity. In addition, Plaintiff

---

[7] Mr. Helton acknowledges that these claims are not predominately based on New Bern's written policies, but rather, the alleged unlawful practices and further acknowledges the challenges he would face to maintain class certification of claims that are predicated on practices, not policies.

1  claimed Drivers were entitled to penalties under the PAGA if Plaintiff was successful in proving
2  the underlying Labor Code claims. Mara Decl. ¶ 14.

3  As stated in Plaintiff's Motion for Preliminary Approval and Supplemental Brief ISO
4  Preliminary Approval, Defendants vehemently deny each and every one of Plaintiff's claims. In
5  sum, Defendants argue that Class Members are exempt from the Labor Code's meal period
6  requirements under Labor Code § 512(e) and that Defendants' written policies required Drivers
7  to take legally compliant meal and rest breaks. Defendants argue Drivers were responsible for
8  simply locking up their trucks appropriately and explicitly told not to answer their phones while
9  on break – which does not create an on-duty meal or rest break, such that Drivers would be (1)
10 entitled to a Labor Code §226.7 penalty or (2) entitled to (straight or overtime) compensation for
11 time spent allegedly on-duty. Defendants also argued Drivers were exempt from overtime under
12 California Labor Code § 514 and the FLSA as the conditions of the Drivers' employment met the
13 criteria for exemption under the FLSA and Labor Code § 514. Further, Defendants argue Drivers
14 would also not be entitled to waiting time penalties because no compensation would flow from
15 these circumstances. Thus, Defendants argue their written compliant policies would pose a
16 significant hurdle at certification and on the merits. Mara Decl. ¶ 15.

17 Defendants also argue that its wage statements are legally complaint and include
18 sufficient information for Plaintiff to make a simple mathematical calculation of the information
19 required by Labor Code § 226, as approved in *Price v. Starbucks Corp.* (2011) 192 Cal.App.4th
20 1136,1143 and *Hernandez v. BCI Coca-Cola Bottling Co.,* 554 Fed. Appx. 661 (9th Cir. 2014).
21 In addition, on April 1, 2017, Defendants changed their wage statements to include an itemized
22 line of the total hours worked, cutting off any potential liability for this claim. Mara Decl. ¶ 16.

23 As for Plaintiff's claim for reimbursement for electricity, Defendants argue that all trucks
24 had built-in charging stations, so there was no need for Drivers to charge their cellphones at
25 home. Mara Decl. ¶ 17.

26 This settlement represents a well-crafted compromise of the divergent positions of the
27 Parties, as detailed in length in Plaintiff's Motion for Preliminary Approval and Supplemental
28 Briefing ISO Preliminary Approval. This settlement provides substantial benefits for the Class.

1  Each side evaluated the strengths and weaknesses of their case and independently concluded that
2  this settlement represents a responsible means of addressing Plaintiff's claims and Defendants'
3  defenses.

4  Another factor considered by some courts in approving a settlement is the complexity,
5  expense and likely duration of the litigation. *Morey v. Louis Vuitton N. Am., Inc*., 2014 WL
6  109194, *5 (S.D. Cal. Jan. 9, 2014); *In re MRV Communs., Inc. Derivative Litig*., 2013 WL
7  2897874, *2 (C.D. Cal. June 6, 2013). In applying this factor, a court should weigh the benefits
8  of the settlement against the expense and delay involved in achieving an equivalent or even more
9  favorable result at trial. *Lane v. Facebook, Inc*., 2010 WL 9013059, *5 (N.D. Cal. March 17,
10 2010).  Here, litigating the case through to trial would have been expensive, required numerous
11 hours of work, involved substantial risk, and would not have been fully resolved for years.  In
12 contrast, the proposed settlement provides significant and certain compensation that is available
13 now as opposed to potentially and hypothetically sometime in the distant future.

14 Finally, employment cases (including wage and hour cases) can be expensive and time-
15 consuming to prosecute. The alternative to a class settlement – i.e., individual litigation – would
16 tax private and judicial resources over a period of years.  As such, the settlement in this case is
17 consistent with the "overriding public interest in settling and quieting litigation" that is
18 "particularly true in class action suits" and thus, provides another reason to approve the
19 Settlement. *Eisen v. Porsche Cars North America, Inc.,* 2014 WL 439006 at *3 (C.D. Cal. Jan.
20 30, 2014); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods.
21 Liab. Litig*., 2013 U.S. Dist. LEXIS 123298, *253-54 (C.D. Cal. July 24, 2013); 4 Newberg §
22 11.41 at 87-89.

23 **b.  Sufficient Discovery and Investigation Has Occurred**

24 Discovery and litigation in the matter were vigorous. Both Parties conducted written
25 discovery and Plaintiff took the Rule 30(b)(6) deposition of Victor Bolanos, New Bern's Sales
26 Operations Manager for the Hayward, California location. Plaintiff propounded three sets of
27 special interrogatories on New Bern and three sets of requests for production of documents. New
28 Bern propounded one set of requests for production of documents on Plaintiff. Both Parties

1  responded to this discovery. Mara Decl. ¶ 18.

2  Plaintiff's written discovery requests led to New Bern producing thousands of pages of documents including, but not limited to, Plaintiff and multiple class members' personnel files, paycheck stubs, time records, employee handbook, collective bargaining agreements, training materials, and wage information. Plaintiff also performed an investigation into New Bern's policies and practices, interviewing numerous class members about their experiences driving for New Bern. Further, from the data Plaintiff received prior to mediation, Plaintiff was able to extrapolate shift counts for the Class Period and the average hourly rate for Drivers to allow for evaluation of the claims prior to mediation. Mara Decl. ¶ 19.

### c. Class Counsel Have Extensive Experience Acting as Class Counsel

Class counsel's experience in complex class action matters is extensive. Indeed, class counsel from the Turley & Mara Law Firm, APLC were class counsel in *Hohnbaum et al. v. Brinker Restaurant Corp et al.,* which is the subject case in the landmark decision of *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004. Mara Decl. ¶ 3. Class counsel has prosecuted numerous cases on behalf of employees for California Labor Code violations and thus are experienced and qualified to evaluate the class claims and to evaluate settlement versus trial on a fully informed basis, and to evaluate the viability of the defenses. Mara Decl. ¶¶ 2-6, 20. This experience instructed Plaintiff's counsel on the risks and uncertainties of further litigation and guided their determination to endorse the proposed settlement.

### d. The Class Members' Response to the Settlement is Further Evidence that the Settlement is Fair and Reasonable

The Ninth Circuit has held that the number of class members who object to a proposed settlement is a factor to be considered in determining a settlement's fairness. *Mandujano v. Basic Vegetable Products, Inc.*, 541 F. 2d 832, 837 (9th Cir. 1976). Here, not a single Class Member has objected to the settlement and only two class members requested to be excluded from the settlement. Yang Decl. ¶¶ 6, 9. The lack of objections and low number of requests for exclusion evidences the class members' endorsement of this non-reversionary settlement.

### e. The Court Should Approve of the Settlement Administration Fee

The Parties agreed to hire CPT to be the Settlement Administrator, a choice the Court approved in conjunction with granting preliminary approval. CPT was responsible for mailing the Class Notice to class members, obtaining better addresses for undeliverable Class Notices, responding to class member inquiries, providing weekly status reports to all counsel, receiving all communications from the class members, and providing a declaration documenting its duties and responsibilities to ensure the class members were given notice of the Settlement. Yang Decl. ¶ 2. Following the grant of final approval, CPT will continue to calculate the payments to participating class members, calculate the withholding taxes, and transmit to the appropriate government agencies, draft and send letters together with the individual Settlement Shares to participating class members, distribute other payments ordered by the Court, follow up with un-cashed checks, and perform such other duties as described in the settlement agreement. *Id.* CPT's fee of $25,000 for services rendered and to be rendered is fair and reasonable and should be granted. Yang Decl. ¶ 13.

### f. The Court Should Approve the PAGA Payment to the LWDA

The payment of $75,000 (75% of $100,000) to the LWDA for its share of the applicable penalties claimed under the California Labor Code's Private Attorney general Act of 2004, as amended ("PAGA"), is reasonable under the circumstances. The Parties negotiated a good faith amount to the LWDA. The sum to be paid to the LWDA was not the result of self-interest at the expense of other Class Members. The LWDA was provided notice of the Settlement concurrently with the filing of the preliminary approval motion and the instant motion. Plaintiff did not receive a response or objection to the Settlement from the LWDA. Mara Decl. ¶ 21. Thus, Plaintiffs request the Court finally approve the sum of $75,000 for payment to the LWDA.

///
///
///
///
///

## VI. CONCLUSION

In light of the foregoing, Plaintiff requests the Court find the settlement fair, reasonable, and adequate and grant final approval of the settlement. Plaintiff further requests that the Court enter final judgment.

Respectfully Submitted,

Dated: December 13, 2018                    **THE TURLEY & MARA LAW FIRM, APLC**

/s/ *Jamie Serb*
David Mara, Esq.
Jamie Serb, Esq.
Tony Roberts, Esq.
Attorneys for Plaintiff